**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

ANGELA L. DUGAN,

      Plaintiff,

      v.                               Case No. 2:17-cv-895
                                        JUDGE MICHAEL H. WATSON
COMMISSIONER OF SOCIAL                Magistrate Judge Chelsey M. Vascura
SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Angela L. Dugan ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security ("Commissioner") denying her

application for social security disability insurance benefits. This matter is before the Court on

Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition

(ECF No. 16), Plaintiff's Reply Memorandum (ECF No. 17), and the administrative record (ECF

No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors

be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.     BACKGROUND

Plaintiff filed her application for Title II Social Security Benefits on October 29, 2013,

alleging that she had been disabled since October 10, 2013, due to two herniated discs in her

back. (R. at 273, 306). On March 9, 2016, following initial administrative denials of Plaintiff's

application, a hearing was held by video conference before Administrative Law Judge Susan F.

Zapf (the "ALJ"). (*Id.* at 101–38). Plaintiff, represented by counsel, appeared and testified.

Plaintiff testified she was unable to work because she could not stand or sit for very long. (*Id.* at 113). She described back stiffness and pain as well as numbness from her waist to her toes bilaterally. (*Id.* at 113, 118). She stated she was in constant pain and had been prescribed oxycodone. (*Id.* at. 113, 118–19). Plaintiff stated she had to pace herself and took one pill a day except on active days when she would need to take two pain pills. (*Id.* at 113, 119). She stated nothing else helped with her pain. (*Id.* at 119). Plaintiff confirmed she was not currently in physical therapy, did not use a cane, walker, or braces, and did not go to the emergency room for pain. (*Id.* at 116). Instead, she stated she had to pace herself when walking and performing household chores. (*Id.* at 116, 123). She stated her son and sister helped her with household chores. (*Id.* at 129).

Plaintiff stated she could sit approximately 30 minutes before needing to stand and stretch and could not walk a quarter mile track without stopping. (*Id.* at 119-20). She stated she could stand about 15 minutes but then would need to sit down due to her back pain. (*Id.* at 122). Plaintiff stated her feet and toes were numb, and she had to be careful shaving and driving. (*Id.* at 122–23).

On June 22, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 80–100). The ALJ noted that Plaintiff met the insured status requirements through December 31, 2018. (*Id.* at 85). At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

gainful activity during the period from her alleged onset date of October 10, 2013. (*Id.*). The

ALJ found at step two that Plaintiff had the severe impairments of degenerative disc disease and

affective disorder. (*Id.* at 86).

The ALJ concluded at step three that Plaintiff did not, however, have an impairment or

combination of impairments that met or medically equaled one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). Specifically, the ALJ considered

and rejected Listings 1.04 (disorders of the spine) and 12.04 (affective disorders).

After setting forth Plaintiff's residual functional capacity ("RFC")[2], and relying on the

hearing testimony of a vocational expert, the ALJ ultimately concluded that Plaintiff is capable

of making a successful adjustment to other work that exists in significant numbers in the national

economy. She therefore concluded that Plaintiff was not disabled under the Social Security Act

during the relevant period. (*Id.* at 94). In this action, Plaintiff challenges only the ALJ's

determination at step three that she did not satisfy Listing 1.04.

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## III.    ANALYSIS

Plaintiff raises a single issue in her Statement of Errors (ECF No. 11): that the ALJ erred

in failing to give sufficient consideration to whether Plaintiff's impairments met or equaled

Listing 1.04(A) (disorders of the spine).  To satisfy this listing, Plaintiff must have an

impairment as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness [*sic*]) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  Additionally, the evidence must show that Plaintiff's

impairment "has lasted or can be expected to last for a continuous period of 12 months."  20

C.F.R. § 404.1525(c)(4).  Plaintiff has the burden of proving that she meets or equals all of the

criteria of a listed impairment.  *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir.

2012); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999) (clarifying that the burden

of proving disability remains with the Social Security claimant at Steps 1 through 4 and does not

shift to the ALJ until Step 5).  Thus, Plaintiff has the burden of establishing all of the following

criteria:

(1) A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

(2) resulting compromise of a nerve root (including the cauda equina) or the spinal cord,

(3) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain,

(4) limitation of motion of the spine,

5

(5) motor loss (atrophy with associated muscle weakness or muscle weakness [*sic*]) accompanied by sensory or reflex loss,

(6) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), and

(7) the impairment has lasted or can be expected to last for a continuous period of at least 12 months.

**A.      The ALJ erred in her step three analysis of Listing 1.04(A).**

Plaintiff argues that she presented sufficient evidence to satisfy this listing, but the ALJ

failed to consider it or to provide an explained conclusion as to why Listing 1.04(A) was not met.

The ALJ's entire discussion of Listing 1.04 comprised the following:

> No treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity.   The undersigned considered listings relative to the claimant's impairments, including 1.04 (Disorders of the spine), 12.04 (Affective disorders), and did not find the presence of any criteria set forth in said listings to warrant a finding that claimant's symptoms meets or equals [*sic*] any listing.
>
> The claimant's impairment failed to meet the listing for 1.04 (Disorders of the spine), because the record, consistent with the findings below, does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness [*sic*]) accompanied by sensory or reflex loss and positive straight-leg raising or; (B) Spinal arachnoiditis or; (C) Lumbar spinal stenosis resulting in pseudoclaudication. (See 20 CFR Part 404 Subpart P, Appendix 1, § 1.04).

(R. at 86).

The Court agrees that these conclusory statements, which merely recite the Listing

requirements without identifying the evidence relied on in reaching her conclusion, do not satisfy

the ALJ's obligations.   In determining whether a claimant satisfies the requirements of a Listing,

the ALJ must "actually evaluate the evidence, compare it to Section [1.04] of the Listing, and

give an explained conclusion, in order to facilitate meaningful judicial review.  Without it, it is

impossible to say that the ALJ's decision at Step Three was supported by substantial evidence."

*Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011). The ALJ failed to do so, and her step three determination was therefore in error.

**B.      The ALJ's error was harmless.**

Although the ALJ erred, remand is not warranted unless Plaintiff was prejudiced by the error. *Rabbers*, 582 F.3d at 654–55 (federal courts generally review decisions of administrative agencies for harmless error). And the Sixth Circuit has determined that failure to provide a substantive step three analysis does not automatically require remand. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014). Rather, the ALJ's error at step three is harmless if either (1) the ALJ made sufficient factual findings elsewhere in her decision to support her conclusion at step three; or (2) Plaintiff has not come forth with sufficient evidence to demonstrate that she meets the Listing criteria. *Id.* at 366; *Lynch v. Comm'r of Soc. Sec.*, No. 1:15-CV-793, 2017 WL 770995, at *4–5 (S.D. Ohio Feb. 8, 2017) (Bowman, M.J.), *report and recommendation adopted*, 2017 WL 749240 (S.D. Ohio Feb. 27, 2017) (Barrett, J.). The Commissioner argues that both of these factors are present, requiring the Court to affirm the ALJ's decision.

First, the Commissioner argues that the ALJ's discussion at step 4, explaining how she arrived at Plaintiff's RFC, contains adequate factual findings to support the ALJ's decision at step 3. The ALJ's step four analysis did note the following: After complaints of pain and numbness in her back and legs, on October 18, 2013, an MRI scan "showed posterior central disc protrusion at L5-S1 with moderate to large left paracentral disc herniation with inferior migration of fragment displacing the S1 nerve root and an annular rent at L4-L5 with small left posterolateral extrusion of disc material narrowing left lateral recess." (R. at 89, citing AR 378–79, 403). That is, these records suggest Plaintiff experienced nerve root compression characterized by neuro-anatomic distribution of pain, as relevant to Listing 1.04(A) criteria 2–3.

The ALJ also noted that at this time, Plaintiff's "range of motion was limited due to pain with positive straight leg raise on the left and negative on the right. Her strength was weak with decreased sharp sensation to S1. Her deep tendon reflexes were 2/4 patella and decreased Achilles on the left." (*Id.* at 89). In other words, these records suggest Plaintiff exhibited limitation of motion of the spine, motor loss accompanied by sensory and reflex loss, and a positive straight-leg test as relevant to Listing 1.04(A) criteria 4–6.

The ALJ further noted that Plaintiff underwent back surgery to address these issues several months later on March 11, 2014. (R. at 89). At a follow up evaluation on April 10, 2014, Plaintiff "reported pain in her back" and "reported some left leg pain but stated that her leg pain was much improved" and that "she was doing well overall." (*Id.*, citing AR 718). At a further follow up visit in August 2014, the ALJ noted that Plaintiff "reported complete relief of her leg pain and denied any numbness, tingling, or weakness." (*Id.*, citing AR 768). Thus, at this point, Plaintiff did not appear to meet any of the criteria for Listing 1.04(A).

In November 2014, the ALJ noted, Plaintiff's leg pain returned. (R. at 90). An MRI revealed "a large L5-S1 herniation" and she underwent a second surgery on November 6, 2014, as a result. (*Id.*, citing AR 766, 769). At a follow up visit in March 2015, the ALJ noted that Plaintiff "endorsed intermittent low back pain with some bilateral thigh pain that resolved with rest but was worse with any walking or standing. . . . She had good motor strength of 5/5 bilaterally. Her reflexes were intact and her gait was unremarkable." (*Id.* 90, citing AR 800). These records suggest that, as of March 2015, Plaintiff could have satisfied Listing 1.04(A) criteria 1–3, but not 5, and these records to not speak to the presence of the remaining criteria.

At an exam in July 2015, Plaintiff was still taking narcotics to manage her pain symptoms. (*Id.*, citing AR 803–40). The ALJ noted that at this time, Plaintiff "had decreased

8

range of motion with tenderness and spasm in her spine" and that Plaintiff "exhibited a positive straight leg raise with some sensory deficits in her left foot." (*Id.*, citing 806, 811).  However, Plaintiff was advised only "to wear her back brace and look to additional non-interventional conservative management such as stationary bicycle utilization and cardiovascular fitness." (*Id.*, citing AR 806).  These records suggest Plaintiff could have satisfied some of Listing 1.04(A) criteria 4–6 at this time.

The ALJ also noted that at a follow up visit in October 2015, the results of Plaintiff's physical examination were largely normal.  (R. at 90, citing 890–91).  In particular, "[r]ange of motion was full at the lumbroscral junction but painful on extension.  Straight leg raises were negative. . . .  Her motor strength and reflexes were normal.  Light touch sensation was intact in all extremities; however, there was reduced sensation bilateral from L4 dermatome down." (*Id.*, citing 890–91).  MRI scans taken at this time showed only "mild to moderate effacement of the thecal sac at L4-L5" of the lumbar spine and "imaging of [Plaintiff's] cervical spine was normal." (*Id.*, citing AR 863, 886).  The findings from these scans did not mention the possibility of nerve root compression.  (R. at 863, 886).  These records thus suggest that at this time, Plaintiff did not meet Listing 1.04(A) criteria 2–6.

In sum, the ALJ expressly considered medical evidence relevant to Listing 1.04(A) in her step four analysis, which demonstrated that although Plaintiff might meet the Listing criteria in October 2013, her impairments were resolved as of August 2013; and that Plaintiff experienced further impairment that might meet the Listing 1.04(A) criteria as of November 2014, but that the criteria were no longer met by October 2015.  Under Listing 1.04(A), Plaintiff's impairment must have lasted or be expected to last for at least a continuous period of at least twelve months, and the evidence expressly considered by the ALJ demonstrates that Plaintiff's impairments did

not meet the durational requirement.  *See Sistrunk v. Comm'r of Soc. Sec.*, No. 1:17-cv-1771, 2018 WL 3126582, at \*12 (N.D. Ohio June 26, 2018) (collecting cases holding that "only occasional or intermittent findings of Listing 1.04 requirements are insufficient" (internal quotation marks omitted)).  The Court therefore concludes that the ALJ made sufficient factual findings in her step 4 RFC analysis such that her failure to conduct a full step 3 analysis is harmless.

Moreover, Plaintiff has failed to satisfy her burden to identify record evidence that showing that she met the criteria of Listing 1.04(A) for a continuous twelve-month period.  After the Commissioner pointed out her failure to satisfy the durational requirement in the brief in opposition, Plaintiff's reply argued only that the Commissioner may not now rely upon the durational requirement because the ALJ did not expressly rely upon it in denying benefits. (Reply at 1–2, ECF No. 17).  As it remains Plaintiff's burden to come forward with evidence that she meets all the Listing criteria, her inability to do so is fatal to her claim.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

## IV.    DISPOSITION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).   A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE